IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT S. HELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.     06 C 4240 |
| and ) | |
| ) | |
| AMERICAN AIRLINES, INC., ) | Hon. Judge Gettleman |
| ALLIED PILOTS ASSOCIATION, ) | |
| JOHN W. JIRSCHELE, JAMES G. SOVICH, ) | Magistrate Judge Denlow |
| JAMES C. CONDES and MARTIN G. REEDY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT AMERICAN AIRLINES, INC.'S AND DEFENDANT JOHN W. JIRSCHELE'S MOTION TO DISMISS**

**INTRODUCTION**

**I.     STANDARD OF REVIEW**

Defendants American Airlines, Inc., ("AA") and John W. Jirschele ("Jirschele") have filed a motion to dismiss Plaintiff's Count I for Wrongful Termination and have asserted, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), that the Plaintiff has failed to state a claim. However, in order to survive the motion, "[Plaintiff] need only provide a short and plain statement of the claim and the grounds on which it rests." *Pinnacle Airlines, Inc. v. National Mediation Board, et al.*, 2003 WL 23281961 (D.D.C., Nov. 5, 2003), *citing Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957). See Also, Fed. R. Civ. P. 8(a)(2). While not particularly short, nevertheless, Plaintiff has attempted to make his claim and the supporting grounds plain to the Defendants and this Court. Movant has a particularly high burden in convincing the Court that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

*Pinnacle Airlines* is instructive. In its counterclaims, the union alleged that the airline had interfered with certain employees' union activities. The District Court noted that the RLA prohibits employer attempts to "…interfere in any way with the organization of its employees…" *Pinnacle Airlines*, 2003 WL 23281961, at p. 2. The airline's conduct occurred post-certification.

In ruling, the Court held that it would be "premature [to] dismiss [the union's] claim without further factual discovery to determine whether it can adduce sufficient evidence to raise an inference that anti-union animus was a substantial or motivating factor behind the challenged action." *Pinnacle Airlines*, at p. 4. See Also *Held v. American Airlines*, 13 F. Supp. 2d 20, 26 (D.D.C. 1998)(The Court found that a ban on non-work related communications in flight operation areas was unlawful.) Plaintiff's pleading now will require an opportunity to pursue discovery and to present facts to the Court before ruling on Defendants' allegations.

## II.  STATEMENT OF FACTS

Defendants begin their Memorandum[1] in Support of their Motion to Dismiss[2] with complete recitation of the text of Plaintiff's January 22, 2005 electronic message taken from the Defendant Allied Pilots Association's ("APA" or "Union") web site area, Challenge & Response ("C&R") which was reserved for democratic discussion of issues between union members. Topics discussed included internal union conflicts or controversies involving union politics, members' choice of representatives, and various factions' support for or opposition to the ratification of proposed collective bargaining agreements ("CBA") between AA and its employees. While the content of the C&R post has little, if any, relevance to Defendants' Rule 12(b)(6) attack on the sufficiency of Robert S. Held's ("Held") pleading, the Defendants' intent is as obvious as it is unseemly.

Defendants attempt to prejudice the Court's perception of Held's claims with the insinuation that his admittedly insulting statements directed toward a protagonist in an intra-union conflict make him and his interest in his employment somehow unworthy of legal protection. While confrontational and certainly not politically-correct, Plaintiff's exercise of his lawful right to participate within the members-only area of his Union's virtual union hall cannot justify the loss of his employment or the denial of the opportunity to defend himself – even though that communication is unwelcome or distasteful.

---

[1] Memorandum in Support of Defendant American Airlines, Inc.'s and Defendant John W. Jirschele's Motion to Dismiss, September 25, 2006, cited herein as "*Memo.*" or "Memorandum."
[2] Defendants' Motion to Dismiss, September 25, 2006, cited herein as "*Motion.*" or "Motion."

In addition, Defendants persist in the mischaracterization of Plaintiff's lawsuit as an attempt to "relitigate" matters already decided upon by a System Board of Adjustment ("SBA") under the RLA. In order to make that argument, movant's refer only to the alleged hate speech and the determination by the SBA regarding the application of AA's work rules. However, Plaintiff's allegations of wrongful termination make <u>no</u> reference to AA's non-negotiated work rules or their application to the contents of the C&R post referenced throughout Defendants' Memorandum. Instead, Held's pleading seeks redress for AA's unprecedented intrusion into the union hall, its interference with union activity in violation of federal statute and its subsequent manipulation and fraudulent subversion of its disciplinary proceedings and of the hearing before the SBA as a façade – a mere pretext for the dismissal of a vocal and unrelenting union activist. In AA's Motion pursuant to R. 12(b)(6), Defendants attempt misdirection and sleight of hand to divert the Court's attention from assessing Plaintiff's actual allegations.

Plaintiff's past involvement in union affairs and AA's response to it lends further credence to Plaintiff's allegations regarding the employer's conduct and the pretext for his termination. Plaintiff Robert Held has actively participated in union activities and had expressed, vociferously at times, his concerns regarding contract terms involving safety procedures and operations, as well as pay and benefits. In 1996 and 1997, Plaintiff campaigned as part of a grass-roots movement within the Union that came to be known as Pilots Defending the Profession ("PDP"). He and others campaigned for a better contract than had been negotiated by Union leaders. Plaintiff's activities displeased his employer and caused AA to undertake efforts to interfere with and to prevent Plaintiff's union activity with his fellow-union members.[3]

Between 1997 and 2005, Held continued his competent service for his employer and the traveling public according to the terms of the CBA. He was also well known amongst the union membership and within AA management for his union activism. Held was a frequent candidate

---

[3] See, *Held v. American Airlines*, 13 F. Supp 2d 20 (D.D.C. 1998). Plaintiff sued American, alleging violation of the RLA Section 152 Third and Fourth. *American* moved to dismiss on several grounds including identical arguments they make in this case, that Held could not bring a suit on an issue that was subject to the grievance process under the RLA. The Court rejected *American*'s arguments and motion. The decision led to a 1998 Memorandum of Understanding between Plaintiff, American, and APA, allowing substantially all of the previously-banned union activity.

for Union office and filed a number of grievances for the benefit of all pilots. Thus, his January 22, 2005 C&R post was part of his continued union activity and concerned an ongoing matter of union politics and the actions of an elected union official.

## ARGUMENT

**I. Despite Defendant AA's Assertions To The Contrary, Plaintiff's Pleading Does Not Attempt To Relitigate The Claims Presented Before the System Board.**

Defendants accuse Held of attempting to "relitigate" a matter that is within the exclusive jurisdiction of the System Board, and thus not properly before this Court. However, in doing so, Defendants' ignore the gravamen of Plaintiff's complaint; Defendants violated the RLA proscriptions against union interference.

Citing *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320 (1972), Defendants argue that a party who has litigated a claim on the merits before an arbitration panel mandated by federal labor law may not relitigate that issue in an independent judicial proceeding. *Id*. at 325. However, *Andrews* is distinguishable from this case because, in *Andrews*, the collective bargaining agreement was the only basis for the cause of action.[4]

Defendants accuse Plaintiff of "artful pleading" in order to avoid the preemptive effect of the RLA showing they understand (as the Court for the Sixth Circuit recently observed) that "how a dispute is characterized affects the path for resolving it." *International Brotherhood of Teamsters, AFL-CIO, et al. v. United Parcel Service Co.*, 447 F.3d 491, 497 (6th Cir. 2006). Plaintiff never submitted his current claim to the SBA, nor could the SBA lawfully decide it. In any case, Plaintiff alleges that the SBA allowed Defendants to conceal material and the SBA refused to reconvene after discovery of relevant facts. Courts have observed that such arbitration boards do not have jurisdiction to hear statutory claims. See, *e.g.*, *ALPA v. Northwestern Airlines*, 627 F.2d 272, 277 (D.D. Cir. 1980) ("[RLA]'s arbitral provisions do not demand that such pure statutory, noncontractual claims be sent to arbitration…. It is doubtful that a Railway Labor Act arbitrator has any authority to consider such independent statutory claims.").

---

[4] "Here it is conceded by all that the only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union." *Andrews*, 406 U.S. at 324. (emphasis added).

4

Unfortunately, Defendants avoid any discussion of the cases providing the appropriate framework for considering of their motion. Nevertheless, the Supreme Court in the case of *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994) ("*Norris*") has provided the most appropriate analytical framework for the denial of Defendants' motion to dismiss Count I. Defendants cite *Norris* to evidence that Congress intended the RLA to provide a comprehensive framework for resolving labor disputes. *Id.* at 252. In *Norris*, the Supreme Court decided that federal courts had jurisdiction over a state-based wrongful termination claim unrelated to the CBA and, therefore, such claims were not preempted by the RLA. In *Norris*, the Court noted in *Andrews*, decided some 22 years earlier, they found that the wrongful discharge claim was firmly rooted in an allegation of a violation of the CBA. *Norris,* 512 U.S. at 257.

Defendants argue that judicial intervention is prempted because the plaintiff is presumed to have litigated his claim on the merits under the RLA. Defendants may not support this argument by citing *Monroe v. Missouri Pacific R.R. Co.*, 115 F.3d 514, 516 (7th Cir. 1997). In *Monroe*, the Seventh Circuit cited *Norris's* conclusion "that the RLA did not preempt the plaintiff's state-law tort actions... because those claims necessitated a purely factual inquiry into the retaliatory motivations of the employer and did not require interpretation of the relevant CBA." *Id.* at 517. In *Monroe*, the Seventh Circuit mentioned their decision in *Bielicke v. Terminal R.R. Ass'n*, 30 F.3d 877 (7th Cir. 1994), a decision also cited by Defendants. In *Bielicke*, the basis of finding the RLA preempted the claim was entirely consistent with *Andrews*: "We conclude that the basis for the plaintiffs' complaint relates directly and solely to the collective bargaining agreements." 30 F.3d at 878. While some facts in the instant case relate to the collective bargaining agreement, the focus of the complaint is on the statutory violations, and therefore does not relate directly and solely to the collective bargaining agreement.

Also, in its review of the District Court's grant of summary judgment in favor of an employee asserting preemption, the Seventh Circuit reversed for the employer and found that the District Court had subject matter jurisdiction over state law claims for the breach of an employment contract between the parties. *Loewen Group Internat'l, Inc. v. Haberichter*, 65 F.3d 1417 (7th Cir. 1995) In recognizing the limitations on Congress' intention to preempt the federal

5

court's subject matter jurisdiction, the Court reiterated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by Section 301 or other provisions of the federal labor law." *Id.* at 1421, *citing Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911 (1985). In its citation to another holding by the Supreme Court, the Seventh Circuit reasoned that "it is clear that the existence of a remedy in a collective bargaining agreement does not deprive a party of separate independent remedies available under state law." *Id.*, *citing Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S.399, 409-10, 108 S.Ct. 1877, 1883 (1988).

As a preliminary matter, Plaintiff again observes that, in *Loewen*, the Plaintiff's pleading of the state based claim required reversal of summary judgment on the issue of preemption under a federal statute. Presumably, the District Court may have found Plaintiff's claim otherwise legally sufficient. Similarly, Held's claim must survive on a motion to dismiss. More significantly, AA tends to ignore the Supreme Court's analysis in *Norris* by identifying Held's allegations with the employer's application of a work rule which, in turn, may implicate the CBA and its disciplinary procedures. While Plaintiff does not agree with either the employer's discipline or the results of the grievance proceedings, he does not plead a cause of action for any violation of a contractual right – other than to the extent that the public policy of federal statutes and Illinois law recognize an employee's interest in a fair and full hearing and an opportunity to present a defense.

Contrary to AA's assertion, the gravamen of Plaintiff's pleading is the employer's improper conduct involving efforts to create a pretext for his termination and for employer conduct tending to interfere with internal union communications in connection with Plaintiff's legitimate union activities. The movant here has identified no procedure under which Held may have sought either a review or a remedy for employer's conduct. Obviously, they cannot. Not only is the Court's assessment of Held's claim not "substantially dependent on analysis of a collective bargaining agreement", it is not even slightly dependent on terms, rights or remedies provided within the CBA. See *Loewen*, 65 F.3d at 1421, *citing Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 2431 (1987) (citations omitted.) Held's claim for Wrongful Termination constitutes the peculiar claim that remains separate and independent of the CBA and

for which independent and separate remedies exist under the law. Consequently, this Court may ignore Defendant's implication that Plaintiff has pled only a minor dispute, and assess its sufficiency as a RLA/LMRDA based claim that seeks an independent, separate remedy.

## II. Public Policy Favors Protecting A Union Member's Right To Communicate With Fellow Union Members Without Fear Of Employer's Retaliation.

Again, Defendants mischaracterize the pleading in order to disparage a claim that Plaintiff did not make. Held does not claim or imply that any law or public policy allows "hate speech." Defendants seem to provide an affirmative defense or public policy the Court may consider in its determination of the merits of the case, but this is simply not an appropriate basis for dismissal at the outset of litigation.

Defendants' argument regarding the absence of a public policy or other legal protection for "vicious, anti-gay hate speech" (*Memo.,* p. 9) has a facile appeal only to the extent that one accepts Defendants' deliberate distortion of the allegations. Instead of addressing the pleading, Defendants engage in diversionary tactics. While the Complaint is lengthy in its recitation of the relevant factual allegations, Held's Count I is succinct. (*Compl.* pp. 67-68). In the several summary allegations provided therein, Held has alleged conduct by Defendants that, when presumed true for purposes of a R.12(b)(6) motion, could support a finding of Defendants' wrongful termination of Held on public policy grounds.

In particular, Held alleges that the employer has interfered impermissibly in an internal union dispute. (Compl. ¶ 456). The employer and its agents manipulated the application of its work rules and the discipline procedure in retaliation for prior criticism of both the airline and the pilots' union. (Compl. ¶ 459). Further, AA's counsel suborned perjury. (Compl. ¶ 458). Finally, AA engaged in tactics intended to deny plaintiff a meaningful opportunity to develop and present evidence in his defense throughout the proceeding. (Compl. ¶¶ 457-458). Pivotally, the limited scope of the System Board of Adjustment's authority in this case is clear in the RLA, the contract, the hearing, and the decision itself. This SBA only has the authority to rule on alleged violations pertaining to the collective bargaining agreement Conclusions

7

regarding violations of federal law and public policy are outside the scope of an SBA under the provisions of the RLA (45 U.S.C. § 153).

In their citation to case law in support of this argument, Defendants seem to miss the point. First, in *Eastern Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000), the Court considered the claim of an employer who sued to overturn an arbitration award reinstating an employee cited for using drugs. The Supreme Court ordered reinstatement pursuant to terms of their CBA, rejecting the employer's argument that these claims implicated public policy concerns. *Eastern* can be distinguished from the facts of this case. First, no agreement here permits the employer to regulate speech inside the union hall. Second, no agreement permits the company to apply work rules to off duty conduct, but, obviously, on this matter, the Union and Defendants disagree. Third, in this case, the parties had agreed that the purpose of discipline is to correct behavior. These matters suggest that the public policy concerns are more compelling to the extent that the violations and conduct alleged concern the fair consideration of an interest in employment and a right to participate in union-related activity.

In *Chrysler Motors Corp. v. Allied Industrial Workers*, 959 F.2d 685, 687 (7th Cir. 1992). the 7th Circuit upheld an arbitrator's reinstatement of an employee accused of sexual assault of another employee apparently while on duty and on the premises of the employer. Like *Eastern,* reinstatement was based solely on the "good cause" provisions of the collective bargaining agreement. There is no evidence that the terminated employee made any claim that his workplace assault was federally-protected union activity. At least one court supported a public policy argument to reverse an arbitrated reinstatement. In *City of Brooklyn Center v. Law Enforcement Labor Services, Inc*., 635 N.W.2d 236 (2001), the Minnesota Court of Appeals upheld a termination that had been reversed by an arbitrator and found there was evidence of an "egregious and long-standing pattern of sexual harassment" by a police officer that impacted employer's legal obligation as a crucial public service. In the instant case, there is ample evidence of persistent action against the plaintiff based on anti-union animus. See, *Held v. American Airlines, Inc.,* 13 F. Supp. 2d 20 (D.D.C. 1998). Obviously, Defendants have no lawful public service mandate to engage in hostile or antagonistic conduct toward union

activists; instead, the discipline pursued against Held provides simply more evidence of a long-standing pattern of hostility toward such activists and their activities which, in turn, invokes the public policy concerns.

As explained above, Plaintiff now seeks a remedy for a wrongful termination based upon the conduct and motivations of AA and its agents. Defendants seek to obscure the actual legal issues implicated by Held's pleading by interposing matters presented in the disciplinary proceedings and during the grievance process. Those proceedings focused almost entirely upon plaintiff's conduct. Held now seeks to hold AA and its agents accountable for *their actions*. From this perspective, Defendants' attempts to interject their own public policy concerns Plaintiff's actions threaten only to obscure further the nature of Plaintiff's allegations and their substance.

### III. Courts Have Consistently Permitted Employees To Proceed With Claims For Violation Of Section 2 Third and Section 2 Fourth of the RLA.

Defendants begin their objection to Plaintiff's allegations under RLA § 2, Third and Fourth, by observing that the RLA does not provide a remedy of termination based upon hate speech. However, Plaintiff's allegation is that Defendants violated the provisions of the relevant statutes when it attempted to "…interfere with, influence, or coerce" Held's political activity and speech. *Compl.* ¶¶ 47, 77, 456; *See also* 45 U.S.C. § 152, Third. In addition, Held alleges that the same conduct tended to influence or coerce employees in their representational choices. 45 U.S.C. § 152 Fourth; *Held v. American Airlines, Inc.*, 13 F. Supp. 2d 20, 25 (D.D.C. 1998), *citing ALPA v. Eastern Air Lines*, 863 F.2d 891, 893 (D.C. Cir. 1988). Plaintiff contends that the employer's effort to enforce its work rules in the Union hall impermissibly influences the Union.

The manner in which Defendants effected Plaintiff's termination, their motivation in squelching criticism of labor negotiations and their interference with an intra-union dispute in the union hall constituted violations of the RLA. These claims are not the type for which a SBA can provide any relief. See also *Held*, 13 F. Supp. 2d at 24 ("The plaintiffs have a right to litigate in federal court claims based on violations of specific statutory sections under the RLA, such as

9

Section 2 Third or Fourth. The mere fact that the plaintiffs' claim could be grieved on contractual grounds under the CBA does not mean that their statutory claim under the RLA is [preempted].")

Defendant American's argument that Plaintiff has no cause of action under RLA § 2 Third and Fourth is operationally identical to American's argument against the same plaintiff in *Held v. American Airlines, Inc.*, 13 F. Supp. 2d 20, 25 (D.D.C. 1998) in which Defendant American also claimed that *Trans World Airlines v. IFFA*, 489 U.S. 426 (1989) preempted claims by plaintiff under the RLA § 2 Third and Fourth. *Memorandum of American Airlines, Inc. in Opposition to Plaintiffs' Request for a Temporary Restraining Order*, May 2, 1997, at 11-12. Plaintiff argued that *TWA v. IFFA* and *Conrad v. Delta Airlines*, allowed a post-certification cause of action against the defendant American. *Plaintiffs' Memorandum in Support of Request for a Temporary Restraining Order,* May 1, 1997, at 12-13. In that case, the Court rejected American's argument and dismissed American's motion. *Held*, 13 F. Supp. 2d at 24.[5] Due to the prior litigation between the parties regarding post-certification protection of the Plaintiff under the RLA, the doctrine of *res judicata* prohibits American from raising the argument in defense.

Even if the doctrine of *res judicata* does not defeat Defendants' identical arguments, the facts support viable allegations sufficient to survive a motion to dismiss because Defendant American's actions are alleged to "interfere with, influence, or coerce the [Union] in its choice of representatives." RLA § 2 Third; *Compl.* ¶¶ 200, 452

Defendants argue that one union member may not invoke the Court's jurisdiction in an RLA claim. *Local Union No. 2000, Int'l Bhd. Of Teamsters v. Northwest Airlines, Inc.*, 21 F. Supp. 2d 751 (E.D. Mich. 1998). In *Northwest Airlines*, the court failed to find a "systematic, predetermined and improper campaign to undermine the Union…" *Id.,* at 757. The controlling precedent in this Circuit (and in others) does not require such a finding in order to obtain jurisdiction. Further, in *Northwest Airlines*, the plaintiffs had conceded that their claim involved a minor dispute under their CBA, but the District Court still found support for jurisdiction over

---

[5] More specifically, the defendant claims that any alleged anti-union acts cannot justify judicial intervention because they do not constitute (1) "a fundamental blow to union or employer activity and the collective bargaining agreement itself," TWA v. IFFA, 489 U.S. at 482, and (2) that the arbitration and negotiation procedures of the RLA cannot effectively address and resolve the dispute. The court disagrees on both contentions and denies the defendant's motion.

10

the matter in *Norris'* rationale and the Supreme Court's citation to the Seventh Circuit's opinion in *Conrad v. Delta Airlines*, 494 F.2d 914 (7th Cir. 1974). *Northwest Airlines*, 21 F. Supp. 2d at 754. At the conclusion of a hearing for preliminary injunction, the District Court found plaintiff unable to establish a statutory violation of the RLA. *Id*. The Court held that it lacked subject matter jurisdiction and thus was compelled to dismiss the claim. However, that Court had received evidence and testimony at a preliminary injunctive hearing which permitted the Court to make findings of fact appropriate for its assessment of the substance of the alleged violations. This Court has had no such opportunity and thus any similar finding would be premature.

Defendants have identified and attempted to distinguish the Seventh Circuit's holding in *Conrad v. Delta Airlines*, 494 F.2d 914. Defendants suggest that the employee's probationary status and the union's subsequent refusal to represent him in grievance or disciplinary proceedings may have justified the Court's jurisdiction in a postcertification context. *Conrad*, 494 F.2d at 916. While Defendants try to minimize *Conrad*, the Court's willingness to remain open and flexible in the assessment of its jurisdiction over these kinds of claims is precisely the approach required by the jurisdictional analysis set forth in *Norris*, and even *TWA v IFFA*.

In part, Plaintiff asserts violations of particular sections of the RLA premised upon AA's attack upon an employee's communications regarding union organization and representation issues on nonwork time and with the use of nonwork property, i.e., the website maintained by the union and which the Plaintiff has identified as the virtual union hall. The employer's censure of Held's communications and ultimate manipulation of the disciplinary proceeding resulting in termination effectively silenced Held's efforts to communicate his view and to participate in the effort to advance union representatives who would not remain as docile in negotiations with AA's management. Certainly, this conduct constitutes the very encroachment on union activity that both the RLA and analogous provisions of the NLRA prohibit.

The Seventh Circuit's holding in *Renneison, et al. v. American Airlines*, 990 F.2d 918, 919 (7th Cir. 1993) can provide little solace for AA in its current attempt to avoid a union member's claim under the RLA. AA observes that the District Court had made a ruling upon the claimed violations with a reference to the plaintiffs' minority status with their union. However,

in affirming dismissal, the Seventh Circuit's analysis focused upon the nature of those claims and their relationship of the underlying dispute to the parties' collective bargaining negotiations, not the number of plaintiffs. Interestingly, the Seventh Circuit disagreed with the lower court, and, after an analysis of *IFFA* and its progeny, ruled that, in fact, the court did have subject matter jurisdiction over the claims. *Renneison*, 990 F.2d at 922.

Finally, despite the Defendants' significant reliance upon *Dempsey, et al. v. Atchison, Topeka and Santa Fe Railway Co., et al.*, 16 F.3d 832 (7th Cir. 1994), the case is factually inapposite and provides little support for Defendants' argument regarding the absence of the federal court's jurisdiction over Held's claims. First, plaintiffs failed to present to the District Court any argument regarding alleged violations of RLA Section 2 Third, and thus waived them on appeal. Also, that pleading attacked the terms of an agreement that resulted from the collective bargaining process between the company and the union. That claim does not remotely resemble the allegations or the nature of the employer's conduct alleged here. Arguably, in the context of management's and labors' intentions to pursue self-help to resolve a dispute, the Court may investigate whether the employer's actions "strike a fundamental blow to union or employer activity and the collective bargaining process itself." *Dempsey*, 16 F.3d at 841, *quoting Trans World*, 489 U.S. at 442. Presumably, the same analysis applies in the context of both major and minor disputes. However, in both *Dempsey* and *Renneisen*, the Seventh Circuit has recognized that the analytical framework proposed by the Supreme Court in *Trans World* (or *TWA*) assists the Court's assessment of the merits of the claims only when they implicate self-help measures. The argument suggested by the Defendants could not provide the basis for establishing jurisdiction over the claims. *Dempsey*, 16 F.3d at 841, *citing Renneisen*, 990 F.2d at 922-23. In granting summary judgment to the Defendant in *Dempsey*, the Court heard evidence regarding the nature of the claims involving the employer's self-help and ruled that it was lawful. Even if the same analysis somehow applied to Held's allegations, this Court may not make this same determination on a motion to dismiss. Defendants cannot reconcile the Court's analysis of that dispute (which involved a CBA or collective bargaining negotiations) and employer's self-help

12

measures at issue with Held's claims, and thus *Dempsey* (nor *Renneisen*) can provide any support for Defendants' request for dismissal.

### IV. The LMRDA Amplifies A Cause Of Action Against Employers.

Defendants argue that the LMRDA does not provide a cause of action against the employer for their discipline of a union member who exercised rights protected by the Bill of Rights within the LMRDA, 29 U.S.C. 411. (*Memo.* at 13). In observing that the LMRDA does not grant explicitly a cause of action for Defendants' pretextual discipline of Plaintiff's political speech, Defendants must ask this Court to find that Congress acquiesced to employers' discipline of union members for exercising free speech *in their own union hall*. Incredibly, as Plaintiff alleges, Defendants expressed rather disingenuously a concern that Congress intended even to hold employers responsible if they did *not* discipline union members for their activities within the union hall. (*Compl. Ex. 5*, at Tr. pp. 315-319). These assertions are simply inconsistent with the RLA's (and the NLRA's) prohibitions against employer interference with or control of union activity, including internal representational issues, and, therefore, Defendants' conduct, as alleged, is contrary to public policy. Not only does the LMRDA explicitly state that it may not be used as a basis for a defense to allegations of violations of the NLRA and RLA (29 U.S.C. 523), but courts have held that the LMRDA amplifies rules against unfair labor practices and other efforts by employers to control unions that are prohibited by the NLRA or RLA. See, e.g. *Local 636 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry of U.S. and Canada, AFL-CIO v. NLRB,* 287 F.2d 354 (D.C. Cir. 1961).[6] Further, in its citation

---

[6] We think that § 101(a)(1) and (2) of the 1959 Act merely amplifies and does not change the meaning of the 1947 [NLRA] Act which reads in pertinent part:
> 'Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *.'
> [We hold] that both Acts give each and every employee an absolute right to make his views known to his fellows and to urge his position to them. In our view anything which might tend to inhibit that right is 'interference.' If intra-union participation by supervisors tends to inhibit this right, then such participation is 'interference' unless it is protected by the Act. If that participation is not protected by the Act and if it can be charged to the respondent companies, then it is 'interference' by the companies, and the Board's order should be enforced.|

*Local 636*, 287 F.2d at 360.

13

to *Local 636*, the 7th Circuit said, "It is entirely appropriate for the [National Labor Relations Board] to protect employee representation in collective bargaining from employer influence by prohibiting supervisory participation that might interfere or give the appearance of interfering with employee rights." *N.L.R.B. v. General Steel Erectors, Inc., 933 F.2d 568* (7th Cir. 1991).

In this decision, the Court discussed another case that cited the discussion in *Local 636*, "In a case specifically reviewing the tension between a union member's rights as guaranteed under the LMRDA and the employer's obligation not to interfere unfairly in the union under the NLRA, the Tenth Circuit determined that the former statute did not trump the latter; rather, the LMRDA simply 'amplified' the NLRA." *International Typographical Union*, 452 F.2d at 976.

Thus, only in narrowly construing this statute can Defendants presumably avoid liability under the provisions of the LMRDA and its related public policy concerns. Still, Held is entitled to enforcement of the prohibitions set forth in the RLA and as amplified by the LMRDA. While Defendants may desire to parse Plaintiff's complaint into individual actions which they claim do not provide a basis for relief, the Supreme Court made it clear that the totality and subtlety of the facts must be considered, that is, "[i]nterference must be determined by careful scrutiny of all the factors, often subtle, which restrain the employees' choice..." *International Association of Machinists etc. v. National Labor Relations Board*, 311 U.S. 72, 80, 61 S.Ct. 83, 88 (1940).

For these reasons, the LMRDA supports and amplifies Plaintiff's claim that Defendants violated the RLA, Section 152, Third and Fourth.

**V.     Plaintiff's State Law Claim For Tortuous Interference With Employment is Not Preempted by the RLA**

Defendants assert that Held's complaint of tortious interference against Jirschele is preempted by the RLA. Citing *Griffin v. Air Line Pilots Ass'n*, 32 F.3d 1079 (7th Cir. 1994), Defendants argue that the Court is required "to investigate the nature of the business relationship between the pilots and [their employer] to assess the degree of expectation." (*Memo.*, at 14). However, Defendants omit the relevant context for the Court's conclusion, *i.e.*, the RLA "preempts state law claims <u>which turn on</u> interpretation

14

of collective bargaining agreements" *Griffin,* 32 F.3d at 1084 (emphasis added). The Court then cited *Andrews v. Louisville and Nashville R. Co.,* 406 U.S. 320 (1972) for further clarification.[7]

The Court's decision in the instant case will not require the interpretation of the collective bargaining agreement, and the collective bargaining agreement is not the only source of plaintiff's right. Thus, *Griffin* affords no basis for preemption for the claim against Jirschele. In their argument that these claims require the interpretation of the contract, Defendants may not rely upon the holdings in *Mohammed v. American West Holding Corp.*, 361 F. Supp.2d 982 (D. Minn. 2005) and in *Kimbro v. Pepsico, Inc.***,** 215 F.3d 723 (7th Cir. 2000). Unlike the instant case, in *Mohammed*, the Court found that it had to interpret the collective bargaining agreement because the parties disputed whether the employment was governed by the agreement. Defendants' citation to *Kimbro* is similarly misplaced because in their summary judgment ruling, the Court found that a trial of the claim also would have required the interpretation of the collective bargaining agreement and that such consideration was preempted by the NLRA.

Held's claim does not "turn on" the contract. Defendants' alleged interference with Held's protected free speech and the violations of statutory provisions constitute the gravamen of Held's complaint – not his employer's violation of the collective bargaining agreement. Accordingly, Held respectfully requests that this Court deny Defendant Jirschele's Motion to Dismiss the state law claim.

                                        Respectfully submitted,

                                        /s/ Robert S. Held
                                        Robert S. Held
                                        Pro Se

Date: November 9, 2006
Robert S. Held
3142 Redwood Court
Flossmoor, Illinois 60422-2267
(708) 957-7710
(866) 456-8491 fax

---

[7] "Here it is conceded by all that <u>the only source</u> of petitioner's right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one that entitles him to damages, is the collective-bargaining agreement between the employer and the union." *Andrews*, 406 U.S. at 324. (emphasis added).

15

## CERTIFICATE OF SERVICE

I hereby certify that, on November 9, 2006, I electronically filed <u>Memorandum In Opposition to Defendant AA's and Defendant Jirschele's Motion to Dismiss</u> with the Clerk of the court using the ECF system, which will send notification of such filing to the following:

Charles C. Jackson
Alison B. Willard
Morgan, Lewis & Bockius LLP
77 W. Wacker Drive, 5th Floor
Chicago, Illinois 60601
awillard@morganlewis.com
charles.jackson@morganlewis.com
*Counsel for American Airlines, Inc., and John W. Jirschele*

Hans U. Stucki
Epstein Becker & Green
150 North Michigan Avenue
35th Floor
Chicago, Illinois 60601-7553
hstucki@ebglaw.com
*Counsel for Martin H. Reedy*

Wesley Kennedy
Allison, Slutsky & Kennedy, P.C.
Suite 2600
230 West Monroe Street
Chicago, IL 60606
kennedy@ask-attorneys.com
*Counsel for Allied Pilots Association, James G. Sovich, and James C. Condes*

I further certify that copies have been mailed by first class mail, postage prepaid, to the following non-ECF participants:

Steve Hoffman
Katie B. Feiock
James & Hoffman, P.C.
1101 Seventeenth St., N.W., Suite 510
Washington, D.C. 20036
*Counsel for Allied Pilots Association, James G. Sovich, and James C. Condes*


/s/ Robert S. Held