IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT S. HELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 06 C 4240 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| AMERICAN AIRLINES, INC., ALLIED | ) |
| PILOTS ASS'N, JOHN W. JIRSCHELE, | ) |
| and MARTIN REEDY | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert S. Held filed a three-count, 488-paragraph, pro se[1] complaint against defendants American Airlines, Inc. ("American"), Allied Pilots Association ("APA"), John W. Jirschele, James G. Sovich, James C. Condes, and Martin G. Reedy, alleging: wrongful termination in violation of the Railway Labor Act ("RLA"), the Labor Management Reporting and Disclosure Act ("LMRDA"), and public policy (Count I); breach of duty to fairly represent (Count II); and wrongful interference with employment (Count III). Plaintiff has moved for leave to amend his complaint to: (1) correct typographical errors; (2) remove individual defendants Sovich and Condes; and (3) add as Count IV a violation of the LMRDA by defendant APA. Pursuant to Fed. R. Civ. P. 12(b)(6), defendant American moves to dismiss Count I, and defendants Jirschele, Sovich, Condes, and Reedy move to dismiss Count III. Defendant APA moves to dismiss plaintiff's claim for punitive damages under Count II.

---

[1]Plaintiff is an attorney licensed to practice in the State of Illinois.

For the reasons stated below, the court permits plaintiff to amend his complaint to correct typographical errors and remove individual defendants Sovich and Condes. Plaintiff may not amend his complaint to add as Count IV a violation of the LMRDA. Further, Counts I and III of the complaint are dismissed, and plaintiff may not seek punitive damages under Count II.

## **FACTS**[2]

Plaintiff was hired as a pilot by defendant American in 1988. Throughout his career with American, plaintiff was a member of defendant APA, the certified collective bargaining representative of pilots employed only by defendant American. The terms of plaintiff's employment were contained in a collective bargaining agreement ("CBA") between defendant American and defendant APA. In 1993, defendant APA established an electronic bulletin board entitled "Challenge & Response" ("C&R"), a password-protected online forum for members of defendant APA. In 1998, defendant APA incorporated C&R into its website, http://www.alliedpilots.org; C&R remained accessible only by password. Members of defendant APA can access the APA website from computers in defendant American's work environment, but the C&R portion of the website cannot be accessed from any computers connected to defendant American's network.

On January 21, 2005, members of defendant APA began a dialogue about Gary Weller, the elected Chairman of defendant APA's Appeal Board. Union members were unhappy because Weller had complained to defendant American about a union member's exercise of off-

---

[2]The facts recited herein are those alleged in the complaint which, for purposes of a Rule 12(b)(6) motion, the court accepts as true. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

duty, off-premises political speech instead of using internal union methods for dispute resolution.

On January 22, plaintiff emailed the following message to C&R from his home computer:

> Gary "little girl" Weller is becoming a very well known child these days.
>
> I'm not sure why a homosexual faggot retard would gain such notice. Quite frankly, I am turned off by dyke, low life assholes, such as he is. But, perhaps there are those that are attracted to such a creature. We are each free to chose [sic] the type of sexual activity we want. Ut why anyone would be attracted to that part of the body which produces excrement is way beyond me, but who am I to judge? Seriously.
>
> Some things in life are certain. My opinion about the fag Weller is easy and presumably a common belief among us.
>
> I have come to the above conclusions because I believe Gary "little girl" Weller, and his cronies, have misused and abused the political process. The small child has run to AMR (again) after he skinned his knee. And his little girl whining is, honestly, at this point quite annoying. Someone, not sure who, should give him a pacifier and a new skirt so we can move own to true union issues.
>
> I hope someone can comfort the little girl, so that the union can move on to union business. I heard there are a couple of thousand of us on the street, and the union wants to discuss our pension plan (scary in and of itself).
>
> I give anyone legally accessing C&R permission to repost, retransmit or make any use of these words they see fit.
>
> I'll keep it short for now. After reading about Gary "little girl" Weller going back to AA (or did he put a friend up to it this time), I have to go take a shower.
>
> Rob Held
>
> P.S. Wasn't there a coward who works with the little girl on the APA Appeal Board who popped up on here once and then disappeared? I forgot his name.[3]

---

[3]Despite his claim that his speech is protected by the Constitution, plaintiff himself finds his posting so offensive that he deems it "unseemly" that defendants reprint it in their motions to dismiss. Plaintiff attaches his posting as an exhibit to his complaint. Exhibits attached to complaints are deemed incorporated by reference and are considered part of the complaint for all purposes. Fed. R. Civ. P. 10(c). Such consideration of exhibits attached to a complaint does not
(continued...)

Plaintiff alleges that defendant Martin G. Reedy, a supervisory pilot, forwarded plaintiff's posting via fax to defendant John Jirschele, the Director of Flight at defendant American's Chicago base, where plaintiff was stationed. Plaintiff further alleges that defendants Sovich and Condes assisted in the delivery of plaintiff's text to defendant Jirschele. At the time of the incident, defendant Sovich was the elected Chairman of defendant APA's unit at defendant American's Boston base; defendant Condes was the elected vice-Chairman of defendant APA's unit at defendant American's Chicago base. Defendants Sovich and Condes were members of defendant APA's Board of Directors. Plaintiff maintains that Executive Members of defendant APA, such as Jirschele, and all management pilots, such as Condes and Sovich, did not have authority to access C&R at any point.

According to plaintiff, defendant Jirschele received a second copy of plaintiff's C&R post when defendant Sovich sent an official union communication to the members of defendant APA's Board of Directors via e-mail called "Policing our own." Such official communications are available for viewing on defendant APA's website by all members of APA and are viewable and printable within defendant American's workplace.[4]

On February 8, 2005, plaintiff received a fax copy of a letter from defendant Jirschele. Attached to the fax were the original fax sent to Jirschele containing plaintiff's post and the

---

[3](...continued)
transform the motion to dismiss into a motion for summary judgment. Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988).

[4]On February 26, 2005, plaintiff filed an internal complaint with defendant APA alleging that defendant Sovich had violated Article VII of defendant APA's Constitution and Bylaws because he jeopardized plaintiff's employment by publishing a document to the workplace which was used as evidence to initiate discipline by defendant American.

4

three-page printout from defendant APA's website containing defendant Sovich's "Policing our own" message. The letter indicated that defendant Jirschele was suspending plaintiff from work with pay pending an investigation into whether plaintiff's posting on C&R violated Rule 32 of defendant American's's Rules and Regulations. Rule 32 provides in pertinent part:

> Behavior that violates the company's Work Environment Policy, even if intended as a joke, is absolutely prohibited and will be grounds for severe corrective action, up to and including termination of employment. This includes, but is not limited to, threatening, intimidating, interfering with, or abusive, demeaning or violent behavior toward another employee, contractor, customer, or vendor while either on or off duty. Behavior that is also hate-related will result in immediate termination of employment, regardless of length of service and prior employment record.

Defendant American's Work Environment Policy defines "hate-related behavior" as:

> [A]ny action or statement that suggests hatred for or hostility toward a person or group because of their race, sex, sexual orientation, religion, or other protected characteristic. This includes, but is in no way limited to, bigoted slurs, drawings, and symbols such as a hangman's noose, a swastika, or graffiti.

The suspension letter indicated that plaintiff would receive a hearing on the matter and was entitled to representation by defendant APA pursuant to Section 21 of the CBA.

Plaintiff's hearing was held on March 1, 2005. Plaintiff was represented by Ron Hunt, Chair of defendant APA's Chicago base, and Richard Moyed, a member of defendant APA's legal department. Moyed made a presentation in plaintiff's defense, arguing: (1) plaintiff's posting was part of a political dispute with Gary Weller, rather than hate speech; (2) the posting was made on C&R, the electronic equivalent of a union hall, and therefore in a protected zone not reachable by defendant American's disciplinary rules; and (3) plaintiff made the posting while off duty and therefore did not harm defendant American's reputation, undermine its ability to manage its workforce, or trigger the refusal of other employees to work with plaintiff.

5

On April 4, 2005, defendant Jirschele held a meeting with plaintiff and representatives from defendant APA to present plaintiff with a letter of termination. The letter stated defendant American's conclusion that plaintiff's posting violated the policy prohibiting "hate-related behavior" under Rule 32 of defendant American's Rules and Regulations and the Work Environment Policy.

Plaintiff filed a grievance contesting his termination as permitted by the CBA. Defendant APA assigned Tricia Kennedy, an in-house attorney, to represent plaintiff. Defendant APA also retained as an expert witness Professor Clyde Summers, who authored much of the LMRDA and testified about the protections given to communications made in a union hall. Plaintiff hired his own attorney to assist in his defense and had additional assistance from APA Board Member Sam Mayer, Chairman of defendant APA's New York base.

With plaintiff's concurrence, defendant APA waived the initial phases of the grievance process and submitted plaintiff's case directly to a System Board of Adjustment arbitration panel. The panel consisted of two representatives from defendant APA, two representatives from defendant American, and one neutral arbitrator, Richard Bloch.

At the hearing and in a post-hearing brief, defendant APA challenged plaintiff's termination on the grounds that: (1) plaintiff's posting constituted off-duty, off-premises speech; (2) defendant American failed to prove that the posting had an adverse effect on its business or operations; (3) the posting was not "hate-related behavior" because it was made in the context of an internal union political debate; (4) federal law gave plaintiff's posting absolute protection from employer sanction because it was made in a "virtual" union hall; (5) plaintiff's punishment

was unduly harsh; and (6) plaintiff was denied due process because defendant American had refused to reveal the identity of the party who sent plaintiff's posting to defendant Jirschele.[5]

The System Board voted 3-2 to deny the grievance and uphold plaintiff's termination. The two representatives from defendant American and the neutral arbitrator were in the majority; the two representatives from defendant APA voted to reinstate plaintiff. The majority concluded that plaintiff's posting constituted "hate-related behavior"despite the fact that the posting was made during a political dispute, because "[h]ateful epithets do not become less offensive or more tolerable by their having arisen in the course of intra-Union saber rattling." The System Board agreed that C&R constituted a "virtual" union hall, but it still considered plaintiff's posting "very public" because it was accessible by all members of defendant APA and reflected plaintiff's "desire not only to expand the publication as much as possible but to disparate, in invidious terms, the sexual preferences of colleagues who might well find themselves in the same workplace or cockpit." Further, the Board ruled that the reaction to plaintiff's posting was not an attempt by defendant American to monitor C&R postings, but instead "a reaction to broad-based slurs, distributed widely to the workforce." The Board therefore found that defendant American had a legitimate interest in responding to plaintiff's conduct and had good cause to terminate him under the CBA.

---

[5]Defendant APA petitioned for a "John Doe" subpoena to learn the identity of the party who transmitted plaintiff's posting to defendant Jirschele, but the arbitrator denied the petition on the ground that the transmitter's identity was irrelevant.

**PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Plaintiff has asked for leave to amend his complaint to: (1) correct typographical errors; (2) remove individual defendants Sovich and Condes; and (3) state a new Count IV alleging that defendant APA's actions constituted a violation of the LMRDA. The court permits plaintiff to amend his complaint to correct errors and remove the individual defendants.

Plaintiff also seeks to amend his complaint by adding Count IV, an allegation that defendant APA violated Title I of the LMRDA. Fed. R. Civ. P. 15(a) states that leave to amend a complaint should be granted freely "when justice so requires," but should be denied when the amendment is "futile." Foman v. Davis, 371 U.S. 178, 182 (1962). Under Fed. R. Civ. P. 15(a), an amendment is "futile" if it fails to state a claim upon which relief can be granted. Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1085 (7th Cir. 1997).

Plaintiff's proposed Count IV alleges that defendant APA violated Title I of the LMRDA by bringing his C&R posting to the attention of defendant American, thereby "inducing" defendant American to terminate him. Title I of the LMRDA gives union members the right "to meet and assemble freely with other members...and to express any views, arguments, or opinions concerning union policies." 29 U.S.C. § 411(a)(2). The Act also makes it unlawful for unions to "fine, suspend, expel, or otherwise discipline" members for "exercising any right to which [they] are] entitled under the provisions" of the statute. 29 U.S.C. § 529.

In the instant case, plaintiff's proposed Count IV does not allege that defendant APA disciplined him in any manner for his actions. Because plaintiff does not allege discipline by the union, he fails to state a claim for which relief can be granted under the LMRDA. Konen v. Int'l Bhd. of Teamsters, Local 200, 255 F.3d 402, 410 (7th Cir. 2001); Webster v. UAW Local 51, 394

F.3d 436, 441 (6th Cir. 2005); Miller v. Holden, 535 F.2d 912, 915 (5th Cir. 1976). Plaintiff's proposed Count IV is therefore "futile" and will not be permitted under Fed. R. Civ. P. 15(a).

**DISCUSSION**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001).

Count I: Wrongful Discharge

Count I of the complaint alleges that defendant American wrongfully terminated plaintiff in violation of: (1) the RLA; (2) the LMRDA; and (3) public policy. Defendant maintains that plaintiff is precluded from bringing his wrongful discharge claim under both the RLA and the LMRDA, and that plaintiff has stated no public policy grounds on which to overturn the finding of the System Board.

*RLA Generally*

The RLA provides for mandatory arbitration for "the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions...[which are] minor disputes." 45 U.S.C. § 151a; Monroe v. Missouri Pacific R.R. Co., 115 F.3d 514, 516 (7th Cir. 1997). Despite

plaintiff's protestations to the contrary, his claim necessitates the evaluation of the CBA to determine applicable work rules and disciplinary procedures. Additionally, the complaint alleges that defendant American "violated Section 24.B.4 of the Contract," which unequivocally requires the interpretation of the CBA. Plaintiff's claim is therefore a "minor dispute" under the statute and falls within the exclusive jurisdiction of the System Board.

Under the RLA, the award of an Adjustment Board is "final and binding." 45 U.S.C. § 153 First (m).[6] As the Supreme Court has held on numerous occasions, "[a] party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding.... He is limited to the judicial review of the Board's proceedings that the Act itself provides." Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 325 (1972). Under the RLA, "[j]udicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." 45 U.S.C. § 153 First (q); Union Pacific R.R. Co. v. Sheehan, 439 U.S. 89, 93 (1978). Plaintiff does not ask the court to review the System Board's ruling on any of these three grounds as required under 45 U.S.C. § 153 First (q). Plaintiff, in fact, concedes in his response to defendant American's motion to dismiss that "he does not plead a cause of action for any violation of a contractual right." Plaintif therefore fails to state a claim under the RLA generally.

---

[6]Section 3 of the RLA applies to the National Railroad Adjustment Board. Section 204 of the RLA requires airlines and their unions to establish Systems Boards with similar authority. 45 U.S.C. § 184.

*RLA §§ 2 Third and 2 Fourth*

Plaintiff also claims wrongful termination under §§ 2 Third and 2 Fourth of the RLA, 45 U.S.C. § 152 Third & Fourth. Section 2 Third protects the rights of union members to choose their own collective bargaining representatives without interference from their employer. Section 2 Fourth prohibits employers from interfering with the organization of their employees. These provisions provide a federal remedy for discriminatory termination based on union organizing activity. This protection, however, extends only to members of unions that have not yet been certified: "From the time of our very first opportunity to interpret [§§ 2 Third and Fourth], we have viewed them as addressing primarily the precertification rights and freedoms of unorganized employees." Trans World Airlines, Inc. v. Independent Fed. of Flight Attendants, 489 U.S. 426, 440 (1989). Once a union has been certified, the RLA prescribes mandatory arbitration for the resolution of "minor disputes," as discussed above. Defendant APA is clearly a certified union, making the System Board plaintiff's exclusive forum for his claim of wrongful termination.

These provisions of the RLA, however, do not provide a remedy after a union has been certified except in cases of extreme anti-union bias or animus. In such cases, the plaintiff must show that the employer's actions "strike a fundamental blow to union or employer activity and the collective bargaining process itself" or are "inherently destructive of union or employer activity." Dempsey v. Atchison, Topeka & Santa Fe Ry. Co., 16 F.3d 832, 841 (7th Cir. 1994). The Supreme Court has held that post-certification judicial intervention is "limited to those cases where 'but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act." Trans World,

489 U.S. at 441, citing Switchmen's v. National Mediation Bd., 320 U.S. 297, 300 (1943). In fact, as defendants note, it appears that no federal court has permitted an employee to pursue a claim under §§ 2 Third and Fourth after the employee has submitted to arbitration under the collective bargaining agreement. In the instant case, plaintiff did, in fact, have a remedy in the form of the System Board and opted to pursue resolution of his grievance in this manner. Plaintiff therefore fails to state a claim under §§ 2 Third and Fourth of the RLA.

Finally, if, as plaintiff argues, his claims should not have been decided by the System Board, his claim under RLA §§ 2 Third and Fourth is barred by the statute of limitations. According to § 10(b) of the NLRA, an employee has six months from the date of the last allegedly wrongful act to file suit against an employer for breach of a CBA. 29 U.S.C. § 160(b); DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151 (1983).

Plaintiff maintains that the statute of limitations should not have tolled until February 22, 2006, the day the decision of the System Board was final. The essence of plaintiff's argument, though, is that his claim should not have gone before the System Board in the first place, because it is one reviewable only by the federal courts and not by an arbitrator. Plaintiff simply cannot have it both ways. If, as plaintiff argues, his claim should not have been heard by the System Board at all, then he was obligated to file the instant lawsuit within six months of his termination as required by the statute of limitations. Plaintiff was terminated on April 4, 2005, giving him until October 4, 2005, to file his suit. Plaintiff did not file his complaint until August 4, 2006. Thus, even if plaintiff stated a claim under §§ 2 Third and Fourth of the RLA, his claim is barred by the statute of limitations.

*Public Policy*

Plaintiff also claims that defendant American wrongfully terminated him in violation of public policy. "A court may not enforce an arbitrator's interpretation of a collective bargaining agreement that is contrary to public policy." Chrysler Motors Corp. v. AFL-CIO, 959 F.2d 685, 687 (7th Cir. 1992). As the Seventh Circuit has held, however, "[s]uch a policy...must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Id., citing W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, 461 U.S. 757, 766 (1983).

As defendants note, there is no "well defined and dominant" public policy protecting hate speech, even when such speech is uttered in the context of union activity. Under the National Labor Relations Act ("NLRA") and the RLA, speech relating to union activity loses statutory protection if it is vulgar, offensive, abusive, or harassing. See, e.g., Adtranz ABB Damiler-Benz Transportation, N.A. v. NLRB, 253 F.3d 19, 26 (finding "derogatory racial or sexual epithets" are not entitled to NLRA protection even when made within the context of union-protected activity); Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 883 n.11 (9th Cir. 2002) (refusing to extend protection to "flagrant, violent, or extreme" speech). Plaintiff has identified no public policy on which to overturn the System Board's decision.

*LMDRA*

Finally, plaintiff claims that he was wrongfully discharged by defendant American in violation of the LMRDA. The LMRDA, however, does not provide plaintiffs with a cause of action against employers. See, e.g., Hayes v. Consolidated Service Corp., 517 F.2d 564, 566 (1st Cir. 1975), citing Duncan v. Peninsula Shipbuilders Ass'n, 394 F.2d 237, 239-40 (4th Cir. 1968);

13

Burkauskus v. Hall's Motor Transit Co., 1985 WL 1266, *2 (N.D. Ill. 1985). Plaintiff therefore does not state a claim under this statute.

For the reasons outlined above, the court grants defendant American's motion to dismiss Count I of the complaint.

Count II: Punitive Damages

Count II of the complaint alleges that defendant APA breached its duty of fair representation. Defendant APA does not move to dismiss this count, but asks the court to dismiss plaintiff's claim for punitive damages. The Supreme Court has held that punitive damages are not available for violations by a union of its duty of fair representation, because "the threat of punitive damages could disrupt the responsible decisionmaking essential to peaceful labor relations." Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 51-52 (1979). Plaintiff may therefore not seek punitive damages under Count II.

Count III

Count III alleges that defendants Condes, Sovich, Jirschele, and Reedy wrongfully interfered with plaintiff's employment in violation of Illinois law when they "induced" defendant American to breach the CBA by terminating him. Plaintiff has removed defendants Condes and Sovich from his proposed amended complaint. Remaining defendants Jirschele and Reedy assert that Count III, which alleges a state law claim of tortious interference, is preempted by federal labor law.

Claims involving interpretation of collective bargaining agreements, such as claims for tortious interference with employment, are preempted by the RLA. Griffin v. Air Line Pilots Ass'n, 32 F.3d 1079, 1084 (7th Cir. 1994). Plaintiff asserts that Count III does not require an

interpretation of the CBA. The complaint itself, however, asserts that "[defendant ]American was induced by the actions of Jirschele, Reedy, Condes, and Sovich to breach its contract with [plaintiff] and violate the RLA and LMRDA...." The contact to which plaintiff refers is the CBA, and the court must interpret the CBA to determine whether plaintiff had a "reasonable expectation of his employment until retirement." Count III therefore necessitates interpretation of the CBA by the court and is preempted by the RLA. For that reason, defendants' motion to dismiss Count III is granted.

## **CONCLUSION**

For the reasons stated above, Counts I and III of the complaint are dismissed in their entirety, and plaintiff may not seek punitive damages under Count II. Further, plaintiff may amend his complaint to correct typographical errors and remove individual defendants Condes and Sovich, but he may not add as Count IV a violation of the LMRDA.

Plaintiff is directed to file his first amended complaint conforming to this opinion on or before February 22, 2007. Plaintiff is cautioned that the only claim remaining is Count II against defendant APA for alleged breach of its duty of fair representation (which was, except for the punitive damages issue, not subject to the instant motion to dismiss), and he is directed to comply with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim." Plaintiff must also comply with all Local Rules of this court, including L.R. 5.2(c). Defendant

APA's response to the complaint shall be filed on or before March 19, 2007. This matter is set for a report on status March 22, 2007, at 9:00 a.m.

**ENTER:** **January 31, 2007**

_____
**Robert W. Gettleman**
**United States District Judge**