IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT S. HELD,                )
                               )
         Plaintiff,            )
                               )   No.  06 C 4240
     v.                        )
                               )   Judge Robert W. Gettleman
ALLIED PILOTS ASSOCIATION,     )
                               )
         Defendant.            )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert S. Held filed a 141-paragraph, 39-page first amended pro se[1] complaint against defendant Allied Pilots Association ("APA"), alleging that defendant breached its duty of fair representation. Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the court grants defendant's motion.

**FACTS**[2]

Plaintiff was hired as a pilot by American Airlines ("American") in 1988. Throughout his career with American, plaintiff was a member of defendant APA, the certified collective bargaining representative of pilots employed by American. The terms of plaintiff's employment were contained in a collective bargaining agreement ("CBA") between American and defendant. According to plaintiff, during his time as a member of defendant, he was known as a "vocal

---

[1] Plaintiff is an attorney licensed to practice in the state of Illinois.

[2] The facts recited herein are those alleged in the complaint which, for purposes of a Rule 12(b)(6) motion, the court accepts as true. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). A fuller recitation of these facts can be found in the court's Memorandum Opinion and Order dated January 31, 2007. Held v. American Airlines, Inc., 2007 WL 433107 (Jan. 31, 2007).

union member and activist" who filed multiple grievances and took strong positions against defendant's political decisions.

In 1993, defendant created an electronic bulletin board entitled "Challenge and Response" ("C&R"), a password-protected online forum for members of defendant. In 1998, defendant made C&R part of its website, http://www.alliedpilots.org, but C&R remained accessible only by password. Members of defendant can access the website from computers in American's workplace, but the C&R portion of the site cannot be accessed from any computers connected to American's network as a result of an earlier grievance filed by plaintiff.

On January 21, 2005, members of defendant began a dialogue about the chairman of defendant's Appeal Board. Union members were unhappy because the chairman had complained to American about a union members' exercise of off-duty, off-premises political speech; the union members felt that the chairman should have used internal union methods for dispute resolution instead. On January 22, plaintiff emailed a message to C&R calling the union chairman, among other things, a "homosexual faggot retard," a "dyke, low life asshole," a "fag," and a "little girl." Plaintiff also stated in his posting, "I give anyone legally accessing C&R permission to repost, retransmit, or make any use of these words they see fit."

According to plaintiff, on January 24, 2005, Michael Mellerski, chair of defendant's Dallas/Fort Worth unit, sent an email to defendant's entire Board of Directors, stating that he had received an inquiry from a union member about plaintiff's C&R posting and what actions defendant intended to take. For several days, the members of the Board of Directors exchanged e-mails about plaintiff's posting. During the exchange, James Sovich, the Chairman of defendant's Boston unit, stated that defendant could not discipline plaintiff, but that defendant

would assist American in doing so. Sovich also stated that he would post copies of plaintiff's posting on bulletin boards in American's workplace. On January 28, 2005, defendant produced and distributed poster-size copies of plaintiff's posting to be hung on bulletin boards in American's workplaces. During the e-mail exchange, other members of the Board of Directors compared plaintiff to Adolph Hitler and suggested that the Federal Aviation Administration should suspend plaintiff's pilot license.

According to plaintiff, on January 30, 2005, supervisory pilot Martin Reedy called John Jirschele, Director of Flight at American's base in Chicago to tell him about plaintiff's posting. Reedy then faxed plaintiff's posting to Jirschele. Sovich and James Condes, the Vice-Chairman of defendant's Chicago unit, acted as "middlemen" between Reedy and Jirschele.[3]

On January 31, 2005, Sovich sent an official union communication via e-mail to defendant's Board of Directors entitled "Policing our own." Attached to that e-mail was plaintiff's C&R posting. Official union e-mails are available for viewing on defendant's website by all members of defendant and can be viewed and printed from computers in American's workplaces.

On February 8, 2005, Jirschele faxed plaintiff a letter that stated plaintiff was suspended from work with pay pending an investigation into whether his C&R posting violated Rule 32 of American's Rules and Regulations. Rule 32, attached to the fax, provides in pertinent part:

> Behavior that violates the company's Work Environment Policy, even if intended as a joke, is absolutely prohibited and will be grounds for severe corrective

---

[3]American never revealed to plaintiff the identity of the individual who transmitted the posting to Jirschele. Defendant petitioned on behalf of plaintiff for a "John Doe" subpoena to learn the individual's identity, but the arbitrator in the hearing challenging plaintiff's eventual termination denied the petition, finding that the transmitter's identity was irrelevant.

action, up to and including termination of employment. This includes, but is not limited to, threatening, intimidating, interfering with, or abusive, demeaning or violent behavior toward another employee, contractor, customer, or vendor while either on or off duty. Behavior that is also hate-related will result in immediate termination of employment, regardless of length of service and prior employment record.

American's Work Environment policy defines "hate-related behavior" as:

[A]ny action or statement that suggests hatred for or hostility toward a person or group because of their race, sex, sexual orientation, religion, or other protected characteristic. This includes, but is in no way limited to, bigoted slurs, drawings, and symbols such as a hangman's noose, a swastika, or graffiti.

The suspension letter stated that plaintiff would receive a hearing and was entitled to representation by defendant pursuant to Section 21 of the CBA.

After plaintiff was suspended, he sought counsel and information from defendant to prepare for his hearing. According to plaintiff, defendant ignored or denied the majority of his requests. When defendant did respond, the material it provided was incomplete, inaccurate, and untimely.

On February 26, 2005, plaintiff filed an internal complaint with defendant alleging that Sovich had violated defendant's Constitution and Bylaws by publishing a document to American that was used to discipline plaintiff. Plaintiff alleges that defendant handled his internal complaint "with incompetence, interference, undue and improper prejudice against [plaintiff], and hostility toward [plaintiff]."

Plaintiff's hearing, led by Jirschele, was held on March 1, 2005. Plaintiff was represented by: (1) Ron Hunt, Chair of defendant's Chicago unit; (2) Richard Moyed, a member of defendant's legal department; and (3) at plaintiff's request, Mark Hunnibell, a fellow member of defendant. Plaintiff's representatives made a presentation in his defense, arguing: (1) the

4

posting was part of a political dispute, rather than hate speech; (2) C&R is the electronic equivalent of a union hall and therefore not reachable by American's disciplinary rules; (3) plaintiff was off duty when he made the posting and therefore did not harm American's reputation, undermine its ability to manage its workforce, or trigger the refusal of other employees to work with plaintiff.

On April 4, 2005, Jirschele held a meeting with plaintiff and Hunt, Condes, and Hunnibell; Moyed participated via telephone. At that meeting, Jirschele presented plaintiff with a letter of termination, which stated that plaintiff's post violated American's policy prohibiting "hate-related behavior" under Rule 32 of the Rules and Regulations and the Work Environment Policy. Plaintiff sought representation from the law firm of defendant's General Counsel, which "had been used in less fundamental matters," but the President of defendant denied plaintiff's request. Defendant instead appointed Tricia Kennedy ("Kennedy"), an in-house attorney of defendant, to "provide services" to plaintiff to grieve his termination.

According to plaintiff, Kennedy was deficient in her assistance to plaintiff in the following ways: (1) she refused to mark the e-mails exchanged by defendant's Board of Directors as an exhibit for plaintiff's arbitration, stating to plaintiff that she did not want to provide evidence that the union was not backing plaintiff; (2) she obtained a complete set of the e-mails exchanged by the Board of Directors but did not provide plaintiff with a copy or disclose that their content was "incriminating" to defendant; (3) she refused to provide plaintiff with notes or a summary of a meeting at which she was present between defendant's Board of Directors and Gary Kennedy, Chief Executive Officer of American; (4) she had private communications with Sovich which she refused to disclose to plaintiff; (6) she concealed her

intention to use Sovich as an expert witness until it was too late to schedule another, which forced plaintiff to abandon his arguments regarding Section 21 of the CBA; (7) she refused to identify the identity of an individual who called defendant's Director of Legal Services regarding plaintiff's arbitration; (8) she refused to provide plaintiff with a transcript of a previous arbitration; and (9) she refused to allow plaintiff to assist in drafting a post-hearing brief. Plaintiff also alleges that defendant refused to provide statutory citations and legal theories being used in a then-pending arbitration regarding another pilot disciplined under Rule 32 for a C&R post.

On July 11, 2005, plaintiff retained his own attorney, David Bodian, who worked as co-counsel with Kennedy (the latter remained "lead counsel"). According to plaintiff, Kennedy threw a "temper tantrum" when plaintiff hired Bodian; she later "backed down," but she refused to let Bodian examine any witnesses during plaintiff's hearing.

At the hearing, Kennedy challenged plaintiff's termination on the grounds that: (1) plaintiff's posting constituted off-duty, off-premises speech; (2) American failed to prove that plaintiff's posting had an adverse effect on business or operations; (3) the posting was not "hate-related behavior" because it was made in the context of an internal union political debate; (4) federal law protected the posting from employer sanction because it was made in a "virtual" union hall; (5) plaintiff's punishment was unduly harsh; and (6) plaintiff was denied due process because American did not reveal the identity of the party who originally sent the posting to Jirschele. Plaintiff also presented evidence that union members were retaliating against him for his earlier political activism within the union.

The System Board voted 3 to 2 to deny plaintiff's grievance and uphold his termination. The majority agreed with plaintiff that C&R constituted a "virtual" union hall, but still considered plaintiff's posting "very public" because it was accessible by all union members[4] and reflected plaintiff's "desire not only to expand the publication as much as possible but to disparage, in invidious terms, the sexual preferences of colleagues who might well find themselves in the same workplace or cockpit." The System Board therefore concluded that the posting constituted "hate-related behavior," despite the fact that it occurred during a political dispute, because "[h]ateful epithets do not become less offensive or more tolerable by their having arisen in the course of intra-Union saber rattling." The System Board found that American had a legitimate interest in responding to plaintiff's conduct and had good cause to terminate him under the terms of the CBA.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading "requires 'only a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, – S.Ct. –, 2007 WL 1582936 (June 4, 2007) (citing Bell Atlantic v. Twombley, 127 S.Ct. 1955, 1964 (2007). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Moranski v. General Motors Corp., 433 F.3d 537, 539 (7th

---

[4] In reaching this conclusion, the System Board noted plaintiff's explicit granting of "permission" to "anyone legally accesssing C&R" to "repost, retransmit, or make any use of these words they see fit."

Cir. 2005). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic, 127 S.Ct. at 1964-65.

Plaintiff alleges that defendant violated its duty of fair representation by: (1) engaging in "concealed and coordinated activities" with American to effect plaintiff's termination; and (2) inadequately representing him in the grievance process after his termination. A union violates its duty of fair representation if its actions are arbitrary, discriminatory, or in bad faith. Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (1991). A union's actions are arbitrary only if the union showed egregious disregard for the union member or if the action was irrational; anything less is not enough to establish arbitrariness. Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 46 (1998); Betts v. Int'l Brotherhood of Electrical Workers Local 1220, 2007 WL 1531826, *3 (N.D. Ill. May 24, 2007). To establish discriminatory or bad faith actions on the part of a union, a plaintiff must "show specific conduct, tied to an improper motive, which had some actual effect on the outcome for the member." Id., citing Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1180 (7th Cir. 1995). Additionally, plaintiff must show that the union's breach of duty "actually affected the outcome of the arbitration." Williams v. Romano Bros. Beverage Co., 939 F.2d 505, 508 (7th Cir. 1991).

In the instant case, plaintiff alleges that the union's inadequate representation caused his unlawful termination by American. In addition to re-hashing matters this court already dealt with in its previous ruling, the complaint essentially boils down to a quasi-malpractice claim regarding Kennedy's efforts on behalf of plaintiff. Of course, for plaintiff to state a claim for inadequate representation, he must allege an injury – in this case, an unlawful termination. Had plaintiff adhered to the requirements of Fed. R. Civ. P. 8(a), which requires a "short and plain

8

statement of the claim," he may have survived defendant's motion to dismiss. Plaintiff, however, has pled himself out of court by including 139 paragraphs of details, including the fact that this court previously found that his termination was not a violation of federal law or otherwise unlawful. As a matter of law, therefore, because plaintiff's termination was not wrongful or unlawful, he has not suffered a legally cognizable "injury"; consequently, he has no claim against defendant for causing an injury. See, e.g., Crider v. Spectrulite Constortium, Inc., 130 F.3d 1238, 1241-43 (7th Cir. 1997).

Even had plaintiff alleged a cognizable injury, the facts alleged in the amended complaint demonstrate that the union's representation did not play a role in his termination. In evaluating plaintiff's grievance, the System Board limited itself to the question of whether plaintiff had engaged in "hate speech" and whether he was protected because of the environment in which his statement was made. Plaintiff admits making the posting at issue, and the System Board agreed with him that his posting occurred in a "virtual" union hall.[5] Consequently, none of defendant's (or Kennedy's) action or inactions that plaintiff alleges would have altered the outcome of the grievance or prevented plaintiff from being terminated. To cut to the chase, the allegations in the amended complaint demonstrate that plaintiff's "gay-bashing" posting constituted hate-related behavior that violated American's Rule 32 and subjected plaintiff to termination. For these reasons, the court grants defendant's motion to dismiss.

---

[5]Additionally, the neutral arbitrator (correctly) found on two separate occasions that the identity of the person who transmitted the posting to American – an issue that plaintiff has consistently raised as paramount – was irrelevant; Kennedy's alleged failure to disclose that information to plaintiff is therefore not actionable as inadequate representation.

## **CONCLUSION**

For the reasons stated above, defendant's motion to dismiss is granted.

**ENTER:** July 10, 2007

_____
**Robert W. Gettleman
United States District Judge**